UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        Respondent,

        v.

MANUEL PENA,
   a/k/a "Manny,"

        Petitioner / Defendant.

00 Cr. 36 (RMB)

# MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO PETITIONER'S PETITION FOR A WRIT OF AUDITA QUERELA

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Brett M. Kalikow
Assistant United States Attorney
*Of Counsel*

**Preliminary Statement**

The Government respectfully submits this memorandum of law in opposition to the *pro-se* petition of Manuel Pena, the petitioner, seeking to have the Court re-sentence him pursuant to a writ of *audita querela*. Dkt. 176 (the "Petition"). On February 21, 2001, Pena was convicted of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 812, 846 and 841(b)(1)(A). On June 1, 2001, at sentencing, the Court found that Pena was responsible for distributing 30 kilograms of heroin, and sentenced him to life imprisonment pursuant to the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") then in effect. On January 23, 2018, the Court reduced Pena's sentence from life imprisonment to 360 months' imprisonment as a result of amendments to the Guidelines.

The Petition argues that the Court should grant a writ of *audita querela* because the Court's reliance on judicial fact-finding concerning drug quantity in connection with the sentence imposed was unconstitutional. The Petition argues that recent Supreme Court decisions issued following his conviction and post-conviction collateral challenges alter the legal landscape such that the Supreme Court's prior decisions in *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), should be applied retroactively and render his sentence unconstitutional.[1] The Petition further contends that the statute under which he was convicted, 21 U.S.C. § 841(b), is facially unconstitutional.

---

[1] *Apprendi* was decided prior to Pena's conviction. This Memorandum construes Petitioner's argument to be predicated on the idea that those Supreme Court decisions stemming from *Apprendi* (having to do with jury versus judicial fact-finding in connection with statutory penalties and sentencing) which were decided after Pena's conviction became final should be construed to apply retroactively to him.

1

Pena's petition should be denied. First, a writ of *audita querela* is not an available remedy in this case because there is a statutory mechanism for Pena to collaterally challenge his conviction and sentence, namely, through the procedures provided in 28 U.S.C. § 2255. Second, Pena's arguments lack merit. The Supreme Court decisions on which the Petition relies reinforce, rather than undermine, the Second Circuit's decisions holding that the rules announced in *Apprendi* and *Alleyne* are not retroactive on collateral challenges because the rules were new procedural rules rather than substantive rules. In addition, Pena's argument that Section 841(b) is facially unconstitutional has already been rejected by the Second Circuit.

I. **Background**

On February 28, 2001, Pena was found guilty following a jury trial of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 812, 846 and 841(b)(1)(A). On June 1, 2001, the Court sentenced Pena to life imprisonment, followed by five years' supervised release. Dkt. 78 (the "Judgment"). At sentencing, the Court found Pena responsible for distributing 30 kilograms of heroin, and determined that Pena's Guidelines Range was life imprisonment. *See* Dkt. 168 ("Gov. 3582 Letter") at 1–2.[2]

On June 8, 2001, Pena appealed his conviction, and on September 23, 2003, the Second Circuit affirmed the defendant's conviction. *United States v. Vergera*, 73 F. App'x 478 (2d Cir. 2003) (summary order).

---

[2] The Court determined that the base offense level was 38 due to the quantity of heroin, and that Pena was subject to a 4-level enhancement for an aggravating role and a 2-level enhancement for his involvement in a kidnapping and use of a firearm, resulting in a total offense level of 44 and a criminal history category of III. *See* Gov. 3582 Letter at 1–2.

On December 9, 2004, Pena filed a petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, which was denied by opinion and order on May 15, 2005 (by Magistrate Judge Andrew J. Peck).  Dkt. 138 (the "2255 Opinion").  Among other things, the Court rejected Pena's arguments that the Court's determination that Pena was responsible for 30 kilograms of heroin and findings regarding other sentencing enhancements violated his right to a jury trial under *Apprendi v. New Jersey*,[3] and that the Supreme Court's decisions in *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 534 U.S. 220 (2005)[4] applied retroactively on collateral review.  *See* 2255 Opinion at 5–9.  On July 7, 2005, Pena appealed the denial of his Section 2255 petition, Dkt. 144, and on June 12, 2008, the Second Circuit affirmed.  *Pena v. United States*, 534 F.3d 92 (2d Cir. 2008) (per curiam).

Pena then challenged the district court's denial of his 2255 petition pursuant to Rule 60(b). On May 16, 2012, the Court denied the motion, and on November 27, 2012, denied Pena a certificate of appealability.  *See* Dkts. 157, 160.  Nevertheless, Pena appealed, Dkt. 161, which appeal the Second Circuit rejected, Dkt. 164.

---

[3] In *Apprendi*, the Supreme Court held that under the Sixth Amendment, "[o]ther than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.

[4] The *Blakely* and *Booker* decisions applied and elaborated upon the *Apprendi* decision.  In *Blakely*, the Supreme Court held "that the Sixth Amendment prohibits sentences greater than 'the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.'"  *Green v. United States*, 397 F.3d 101, 102 (2d Cir. 2005) (quoting *Blakely*, 542 U.S. at 303).  In *Booker*, the Supreme Court "held that the Guidelines violated the Sixth Amendment to the extent that they allowed the maximum sentence authorized by a guilty plea or a verdict to be increased based on findings of fact (other than the fact of a prior conviction) made by the judge; [and] that the remedy was to make the Guidelines advisory."  *Guzman v. United States*, 404 F.3d 139, 141 (2d Cir. 2005) (discussing *Booker*, 543 U.S. at 242–245).

On September 22, 2016, Pena moved for a reduction of sentence pursuant to 18 U.S.C. § 3582(c). Dkt. 165. On January 23, 2018, the Court reduced Pena's sentence from life imprisonment to 360 months' imprisonment. Dkt. 174.

On December 27, 2018, Pena filed the instant petition.

## II.   **Applicable Law**

*Audita querela* is "[t]he name of a common law writ constituting the initial process in an action brought by a judgment defendant to obtain relief against the consequences of the judgment on account of some matter of defense or discharge arising since its rendition and which could not be taken advantage of otherwise." *United States v. Holder*, 936 F.2d 1, 2 (1st Cir. 1991) (per curiam) (quoting Black's Law Dictionary 120 (5th ed. 1979)); *see also United States v. Ayala*, 894 F.2d 425, 427 (D.C. Cir. 1990) ("The common law writ of *audita querela* permitted a defendant to obtain 'relief against a judgment or execution because of some defense or discharge arising subsequent to the rendition of the judgment.'") (quoting 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2867 at 235 (1973)).

A writ of *audita querela* is an "extraordinary remedy under the All Writs Act." *United States v. Quintieri*, 547 F. App'x 32, 33 (2d Cir. 2013) (summary order). The writ "remains available in limited circumstances with respect to criminal convictions. Specifically, it is probably available where there is a legal, as contrasted with an equitable, objection to a conviction that has arisen subsequent to the conviction and that is not redressable pursuant to another post-conviction remedy." *United States v. Richter*, 510 F.3d 103, 104 (2d Cir. 2007) (per curiam) (internal quotation marks omitted) (quoting *United States v. LaPlante,* 57 F.3d 252, 253 (2d Cir. 1995)); *see also United States* v. *Valdez-Pacheco*, 237 F.3d 1077, 1079 (9th Cir. 2001) (per

4

curiam) (noting that the writ "survive[s] only to the extent that [it] fill[s] 'gaps' in the current systems of postconviction relief"). The writ also "might be deemed available if [its] existence were necessary to avoid serious questions as to the constitutional validity of both [28 U.S.C.] § 2255 and § 2244—if, for example, an actually innocent prisoner were barred from making a previously unavailable claim under § 2241 as well as § 2255." *Triestman* v. *United States*, 124 F.3d 361, 380 n.24 (2d Cir. 1997).

"The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. As a result, '[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling.'" *Pipola v. United States*, 430 F. App'x 31, 32 (2d Cir. 2011) (summary order) (quoting *Pennsylvania Bureau of Correction v. U.S. Marshals Serv.,* 474 U.S. 34, 43 (1985)). "Courts have determined that *audita querela* is not available even in those cases where a petitioner is precluded from raising his or her claims in a successive § 2255 motion because a previous § 2255 motion was denied on the merits." *Persico v. United States*, 418 F. App'x 24, 25–26 (2d Cir. 2011) (summary order).

### III.   Discussion

Pena's petition for a writ of *audita querela* should be denied, both because the writ is unavailable in this case and because Pena's arguments lack merit.

#### A.   A Writ of *Audita Querela* Is Unavailable in This Case

A writ of *audita querela* is unavailable in this case, and petitioner's proper recourse is to seek leave to file a successive 2255 petition.

The mechanism for Pena to seek redress for the harms claimed is covered by statute, and therefore he may not avail himself of the writ of *audita querela*. "[F]ederal prisoners challenging

5

the legality of their convictions or sentences must proceed by way of motion pursuant to 28 U.S.C. § 2255 . . . ." *Cephas v. Nash,* 328 F.3d 98, 103 (2d Cir. 2003); *see* 28 U.S.C. § 2255(a).   Where a prisoner previously filed a 2255 motion that was dismissed on the merits, the statute provides a mechanism for the prisoner to seek to file a second or successive petition.   *See Corrao v. United States*, 152 F.3d 188, 191 (2d Cir. 1998) (defining a "second or successive" Section 2255 motion under the Antiterrorism and Effective Death Penalty Act of 1996); 28 U.S.C. § 2255(h).[5]

Here, Pena asserts constitutional challenges to his conviction and sentencing, which challenges fall within the scope of 28 U.S.C. § 2255(a).   Because Pena's initial Section 2255 motion was dismissed on the merits, the proper mechanism for Pena to make these arguments is to seek certification for a second or successive motion, and he may not use a petition for a writ of *audita querela* to do an end-run around the federal habeas statute.   *See Legrano v. United States*, 513 F. App'x 6, 7 (2d Cir. 2013) (requiring prisoner to present claims in form of seeking leave to file second or successive Section 2255 motion); *Pipola*, 430 F. App'x at 32–33 (affirming denial of writ of *audita querela* because petitioner required instead to file second or successive section 2255 motion).   This is true even if a petitioner's claims would not meet the narrow requirements for a second or successive motion. *See Legrano*, 513 F. App'x at 7 (finding petitioner would not meet requirements for successive motion if the appeal were so construed); *Pipola*, 430 F. App'x at 32–33 (same).

Indeed, Pena's initial 2255 motion made the same types of constitutional arguments challenging his sentencing that he does in the instant petition.   There, as here, Pena challenges the

---

[5] Second or successive motions must be certified by a panel of the court of appeals to be based upon newly discovered evidence or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."   28 U.S.C. § 2255(h).

judicial fact-finding of drug quantity in connection with sentencing as violating his constitutional rights to have those facts determined by a jury. *Compare* 2255 Decision at 5–9, *with* Petition at 5–17. Because Section 2255 provides a statutory mechanism for petitioner to raise these claims— even where, as here, seeking leave to file a second or successive 2255 motion would likely be unsuccessful—a writ of *audita querela* is unavailable. *See United States v. Collins*, 373 F. App'x 94, 94–95 (2d Cir. 2010) (summary order) (affirming denial of writ of *audita querela*, noting that petitioner's *Apprendi* claims were considered in his prior 2255 motion, his motion for reconsideration, and in the denial of a certificate of appealability from the denial of those motions); *Mora v. United States*, 358 F. App'x 223, 224 (2d Cir. 2009) (affirming denial of writ of *audita querela* in light of the non-retroactivity of *Booker*).

Petitioner cannot invoke *audita querela* to avoid the requirements for seeking to file a second or successive Section 2255 motion, and therefore, the Petition should be denied.

### B. Petitioner's Arguments Lack Merit

Even if a writ of *audita querela* were available in this case, petitioner's arguments lack merit. Petitioner makes two arguments that his sentencing was unconstitutional and that the District Court should resentence him. First, he argues that his conviction under 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A) and his attendant sentencing were unconstitutional as applied to him because his sentenced was based on judicial fact-finding concerning the quantity of heroin he was responsible for distributing, and that recent Supreme Court decisions provide a basis for re-visiting Second Circuit precedent concerning the non-retroactivity of the Supreme Court's decisions in *Apprendi* and *Alleyne*. Second, he argues that the one of the statutes under which he was convicted, 21 U.S.C. § 841(b), is facially unconstitutional.

7

These arguments are unavailing. First, the recent Supreme Court decisions petitioner cites reinforce, rather than undermine, the Second Circuit's holdings that *Apprendi* and *Alleyne* do not have retroactive effect, and therefore, petitioner may not rely upon *Apprendi* and *Alleyne* (or others in that line of cases) issued after his conviction became final to collaterally challenge his conviction and sentence. Second, the Second Circuit has held that Section 841 is not facially unconstitutional, and the Ninth Circuit case holding the contrary on which petitioner relies is not good law, having been withdrawn *en banc*.

1. The Supreme Court decisions petitioner cites support the Second Circuit precedent that *Apprendi* and *Alleyne* are not retroactively applicable.

Petitioner argues that the Supreme Court's decisions in *Welch v. United States*, 136 S. Ct. 1257 (2016), and *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), require overturning Second Circuit precedents holding that *Apprendi* and *Alleyne* do not have retroactive effect. Petitioner contends that these intervening developments in the law make available to him defenses that were previously unavailable, thus supporting his petition for a writ. *See* Petition 5–15. However, contrary to petitioner's argument, *Welch* and *Montgomery* apply the same retroactivity framework that the Second Circuit applied in *Coleman* and *Redd* and reinforce rather than undermine the holdings that *Apprendi* and *Alleyne* are not retroactive.

In *Coleman v. United States*, 329 F.3d 77 (2d Cir. 2003), the Second Circuit held that the Supreme Court's decision in *Apprendi* announced a procedural rule and not a substantive rule, and therefore *Apprendi* did not have retroactive effect. In *Apprendi v. New Jersey*, the Supreme Court held that "[o]ther than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a

8

reasonable doubt." *Coleman*, 329 F.3d at 84 (emphasis omitted) (quoting *Apprendi*, 530 U.S. at 490). The Circuit evaluated whether *Apprendi*'s rule would apply retroactively based on whether the rule was "substantive" or "procedural," with substantive rules generally applying retroactively, and procedural rules generally not applying retroactively, with two limited exceptions not applicable here. *See id.* at 83–84 (discussing, *inter alia*, *Bousley v. United States*, 523 U.S. 614 (1998) and *Teague v. Lane*, 489 U.S. 288 (1989)). As the Circuit explained, substantive rules normally alter the scope of conduct that constitutes a particular crime (*i.e.*, they change the parameters of what conduct is prohibited by law), whereas procedural rules apply "to all crimes irrespective of the underlying conduct, and to all defendants regardless of their innocence or guilt." *Id*. The Circuit held that *Apprendi* announced a procedural rule because it addressed the procedure of "who decides a given question (judge versus jury) and under what standard (preponderance versus reasonable doubt)." *Id.* at 84 (internal quotation mark omitted) (quoting *Curtis v. United States*, 294 F.3d 841, 834 (7th Cir. 2002)); *see also id.* at 84–88. The Circuit therefore concluded that because the *Apprendi* rule was a procedural rule that did not fall within the exceptions announced in *Teague*, *Apprendi* does not apply retroactively on collateral review. *Id.* at 87–90.

In *United States v. Redd*, 735 F.3d 88 (2013) (per curiam), the Second Circuit held that the Supreme Court's decision in *Alleyne* did not announce a new substantive rule. In *Alleyne*, the Supreme Court held that "any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury and proved beyond a reasonable doubt." *Redd*, 735 F.3d at 90 (alteration in original) (internal quotation marks omitted) (quoting *Alleyne*, 133 S. Ct. at 2155). The Circuit, applying the *Teague* framework, held that *Alleyne*'s rule was not a

9

substantive rule because it was not a rule that "place[s] certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Id.* at 91 (internal quotation marks omitted) (quoting *Teague*, 489 U.S. at 311)

The Supreme Court's decisions in *Welch* and *Montgomery*, on which petitioner relies, apply the same *Teague* framework for assessing retroactivity that the Second Circuit applied in *Coleman* and *Redd*, and the Supreme Court's analysis in those cases support the Second Circuit's holdings regarding the non-retroactivity of *Apprendi* and *Alleyne*. In *Welch*, the Supreme Court considered whether its decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), is a substantive decision that is retroactive on collateral review. In *Johnson*, the Supreme Court held that the "residual clause" of the Armed Career Criminal Act—which provided for increased mandatory minimum and maximum penalties for the possession of a firearm for certain offenders—was unconstitutionally vague. *See Welch*, 136 S. Ct. at 1260–61 (discussing *Johnson*). The Supreme Court held that under the *Teague* framework for retroactivity, the *Johnson* decision was a substantive rule. As the Court explained, "[b]y striking down the residual clause as void for vagueness, *Johnson* changed the substantive reach of the Armed Career Criminal Act, altering 'the range of conduct or the class of persons that the [Act] punishes.'" *Id.* at 1265 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)).

Especially noteworthy for the present Petition, the Court in *Welch* expressly contrasted *Johnson*'s substantive rule with procedural rules pertaining to whether judges or juries should make particular determinations (such as those rules announced in the *Apprendi* line of cases): "*Johnson* is not a procedural decision . . . [because it] had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced

10

under the Armed Career Criminal Act. It did not, for example, allocate decision making authority between judge and jury." *Id.* (internal citations and quotation marks omitted). *Welch* thus expressly support the Second Circuit's holdings that *Apprendi* and *Alleyne*, and similar cases, announced procedural rules that do not have retroactive application.

The Supreme Court's analysis in *Montgomery* similarly supports the Circuit's conclusion that *Apprendi* and *Alleyne* are non-retroactive procedural rules. In *Montgomery*, the Supreme Court considered whether the rule announced in *Miller v. Alabama*, 132 S. Ct. 2445 (2012), was a substantive or procedural rule. *Miller* "held that a juvenile convicted of a homicide offense could not be sentenced to life in prison without parole absent consideration of the juvenile's special circumstances in light of the principles and purposes of juvenile sentencing." *Montgomery*, 136 S. Ct. at 725 (discussing *Miller*). "Although *Miller* did not foreclose a sentencer's ability to impose life without parole on a juvenile, the Court explained that a lifetime in prison is a disproportionate sentence for all but the rarest of children, those whose crimes reflect irreparable corruption." *Id.* at 726 (internal quotation marks omitted).

The Supreme Court in *Montgomery* held that *Miller* announced a substantive rule. The rule is substantive: "Because *Miller* determined that sentencing a child to life without parole is excessive for all but the rare juvenile defender whose crime reflects irreparable corruption," the decision had announced a rule that rendered a particular punishment "an unconstitutional penalty for a class of defendants because of their status." *Id.* at 734 (internal quotation marks omitted). The Supreme Court further explained that the existence of a procedural *component* in *Miller*'s rule—"that sentencing courts consider a juvenile offender's youth and attendant characteristics before determining that life without parole is an appropriate sentence"—did not render the rule

11

itself procedural. *Id.* at 734–35. Rather, procedural rules are those that "regulate only the *manner of determining* the defendant's culpability," whereas *Miller*'s procedural component simply gave effect to the substantive rule regarding the disproportionate nature of particular penalties. *See id.* (alteration and internal quotation marks omitted) (quoting *Schriro*, 542 U.S. at 353).

The *Montgomery* Court's analysis of *Miller* does not support Petitioner's contention that *Apprendi* and *Alleyne* announced rules that render a penalty unconstitutional for a class of defendants because of their class or offense, or alter the substantive reach of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)–(C). *See* Petition at 6–7. *Miller* announced a substantive rule because it pertained to a particular class of defendants—juvenile defendants—and the permissibility of particular penalties for them. By contrast, *Apprendi* and *Alleyne* apply across categories of defendants. Moreover, *Apprendi* and *Alleyne* do not address the scope of conduct prohibited by the statutes, but rather address the manner of determining facts related to a defendant's statutory penalties and sentence, *i.e.*, whether a judge or jury should determine facts relevant to sentencing, and what standard of proof applies. *Montgomery* therefore does not provide any basis for revisiting the Second Circuit's holdings that *Apprendi* and *Alleyne* do not have retroactive application in collateral proceedings.

Because the Supreme Court cases on which Pena relies do not make available to him any new defense not previously available, and because the decisions in the *Apprendi* line do not have retroactive effect so as to render Pena's sentence constitutionally infirm, the petition should be denied.

    2.   <u>Section 841(b) is not facially unconstitutional.</u>

Pena's second argument is that the statute under which he was convicted, Section 841(b), is facially unconstitutional. Pena contends that the statute, as congressionally enacted, directed drug quantity determinations to be made by judges not juries, which is unconstitutional under *Apprendi*, and that the statute cannot be saved by courts by assigning to juries the responsibility for making drug quantity determinations. Petition at 15–17. That argument is meritless.

The Second Circuit has expressly rejected petitioner's argument. In *United States v. Outen*, the Circuit held that Section 841 is not facially unconstitutional following *Apprendi*. 286 F.3d 622, 634–36 (2d Cir. 2002) (Sotomayor, J.). In the Petition, Pena bases his argument on a Ninth Circuit opinion holding the contrary, *United States v. Buckland*, 259 F.3d 1157 (9th Cir. 2001), but that opinion was withdrawn *en banc*. *See United States v. Buckland*, 277 F.3d 1173, 1178–83 (9th Cir. 2002); *see also Outen*, 286 F.3d at 636 (citing *Buckland*, 277 F.3d at 1179–81).

## Conclusion

For the foregoing reasons, the petition for a writ of *audita querela* should be denied.

Dated: New York, New York
February 28, 2019

    Respectfully submitted,

    GEOFFREY S. BERMAN
    United States Attorney for the
    Southern District of New York

by: _____

    Brett M. Kalikow
    Assistant United States Attorney
    (212) 637-2220

cc: Manuel Pena (via Certified Mail)

AFFIRMATION OF SERVICE

BRETT M. KALIKOW hereby affirms pursuant to Section 1746 of Title 28, United States Code:

1.    I am an Assistant United States Attorney in the office of Geoffrey S. Berman, United States Attorney for the Southern District of New York.

2.    On February 29, 2019, I will cause a true and correct copy of the foregoing Memorandum of Law of the United States in Opposition to Petitioner's Petition for a Writ of Audita Querela, to be sent via first-class mail to:

> Manuel Pena
> Reg. No. 19265-069
> Federal Correctional Institution-Berlin
> P.O. Box 9000
> Berlin, NH 03570

3.    I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Dated: New York
       February 28, 2019

                                                  Brett M. Kalikow